## Arthur Moore *v.* William Caldwell.

The legality of the election of the trustees of the sixteenth section of school lands, can-
not be investigated on a bill in chancery charging their election to be illegal, and
praying an injunction to prevent them from discharging their official duties. This
can only be done by an information in the nature of a *quo warranto,* regularly prose-
cuted before the proper tribunal.

The acts of such trustees *de facto* are valid, and a title given by them cannot be ques-
tioned by their successors in office or any other person.

On the 12th day of July, 1836, Arthur Moore bought of John F.
Ferne, James Scott and others, trustees, under the statute of this
state, of the sixteenth section of township No. 19, range 9 east, in
the county of Choctaw, and executed to Daniel S. Farrington, pre-
sident of the board of trustees, several notes therefor, payable in
one, two, three and four years. On the 21st day of August, 1838,
a new board of trustees, to wit: William Caldwell, Edward John-
son, James A. Kennedy, John Snow and Thomas N. Davis came
into office and took possession of the notes of Arthur Moore, given
for the purchase of the sixteenth section of school lands to the pre-
vious board of trustees.

The complainant, Moore, charges that the board of trustees
were not legally elected after legal notice; that they did not legal-
ly qualify or give bond according to law, and that their acts were
void; that they could give no title to the land sold, and therefore
the consideration of the notes given by Moore had failed.

The bill seeks to enjoin perpetually the collection of these notes,
and prays that the same may be delivered up and cancelled. In
support of these allegations the complainant filed the following as
an exhibit to his bill:

"Be it remembered, that, at a meeting of the board of county
police, for the county of Choctaw and state of Mississippi, begun
and held in the town of Greensborough, on the 18th day of April,
1836, there was passed by the board the following order relative

to the election of trustees to dispose of the sixteenth section in township 19, of range 9 east, in the words following, to wit:

"Ordered by the court, that the clerk issue a writ to John Snow, justice of the peace in Choctaw county, commanding him to advertise and hold an election, in the town of Greensborough in said county, for the purpose of electing five trustees to lease and dispose of the sixteenth section in township nineteen of range nine east, as the law directs in such cases.

"Be it remembered, that John Snow executed his bond to Dan'l S. Farrington, as clerk and treasurer of the said board of trustees, in the words and figures following, to wit:"

[Here follows a copy of the bond, which is signed, sealed, delivered and approved, July 1, 1836.]

At a meeting of the board of police of Choctaw county, on the 9th day of July, 1838, the following order was made:

"Ordered by the court, that William Caldwell be authorized to hold an election in township 19, range 9 east, for the purpose of electing trustees for said township, after giving ten days notice of the time and place of holding said election, to be holden in the town of Greensborough, on the 21st of this instant.

"Be it remembered, that, at a meeting of the board of police for the county of Choctaw and state of Mississippi, begun and held in the town of Greensborough, on the 21st day of August, A. D. 1838, the trustees *elected* appeared and took the oath of office, as follows, to wit: William Caldwell, Edward Johnson, John Snow, James A. Kennedy and Thomas N. Davis, this day came into open court and took the necessary oath of office as trustees of the 16th section, township 19, range 9 east, and also gave bond and security, conditioned as the law directs, in the words following, *to* wit:"

[Here follows a copy of the bond.]

BAIN and McLEAN for complainant.

The testimony in the cause consists of the exhibits of the complainant, which fully sustain the material allegations in the bill and are not denied by the defendants, but, on the contrary, are admitted by them.

These show a want of power, in the parties conveying, to make title. Their authority was a mere *naked power* under a statute,

and they could do no act of any validity unless they come under the requisitions of the statute. The record (exhibits) in the cause shows that they have not done this. The record is certified by the proper officer to be complete; and if it be, there is certainly no pretence of authority in the parties to convey, as the trustee of the sixteenth section alluded to in the bill. But, on the contrary, (the general allegations in the answer to the contrary notwithstanding,) it is certainly evident that those who sold to complainant were as destitute of authority to do so as any other individuals in the United States.

The CHANCELLOR.

The complainant purchased part of the sixteenth section from the trustees of the township, and gave his note for the purchase money. He alleges he obtained no title, because, he says, the trustees were not *legally* elected, there having been some irregularity in the mode of conducting the elections.

I have heretofore decided this question. Whether the election was or was not conducted with all the formalities prescribed by law, is a question which cannot be investigated in this collateral mode. That can only be done by an information in the nature of a *quo warranto*, regularly prosecuted before the proper tribunal. They were at least trustees *de facto*, whether *de jure* or not, and their acts as such will be held valid.

The complainant does not pretend that he has been disturbed in his title, or that it has in any way been questioned. Who could question it? Certainly no one but the trustees who might succeed those who were the complainant's vendors. Could they question it? Certainly not: they would be *estopped* by the deed of their predecessors, being privies in law.

The bill must be dismissed at the complainant's cost.